UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VINCENT L. WISE,                    :      CIVIL NO.  4:06-CV-0954
                                    :
            Plaintiff               :      (Judge McClure)
                                    :
        v.                          :      (Magistrate Judge Smyser)
                                    :
LINDA S. McMAHON,                   :
Acting Commissioner of             :
Social Security,                    :
                                    :
            Defendant               :


**REPORT AND RECOMMENDATION**


        The plaintiff has brought this civil action under the

authority of 42 U.S.C. § 405(g) to obtain judicial review of

the decision of the Commissioner of Social Security denying the

claim of the plaintiff for Social Security disability insurance

benefits.


        On April 19, 2004, the plaintiff, Vincent L. Wise,

applied for disability insurance benefits.  Tr. 120.  He

claimed that he became disabled on May 15, 2003, as the result

of insulin diabetes mellitus, bipolar disorder, paranoid

schizophrenia, stomach and digestive problems and asthma.  Tr.

170-173.  The claim was denied initially and on

reconsideration.  The plaintiff filed a request for a hearing,

and a hearing was held before an administrative law judge (ALJ)

on September 22, 2005.  Tr. 25-58.

    At this hearing the plaintiff and a vocational witness

testified.  The ALJ stated at the outset of the hearing:

    ALJ: The claimant is 34 years old, has a seventh grade

    education, past work as a deli clerk, dishwasher and

    janitor.  The record indicates that he has insulin

    dependent diabetes, bipolar disorder, asthma, peptic

    ulcer disease, hepatitis C.  He's also been diagnosed

    with paranoid schizophrenia and there's a history of

    polysubstance abuse.  In your submission of August 23,

    you think he meets 12.05(c) because of the IQ scores

    that were obtained in Exhibit 3F.  I let you all know

    to meet 12.05(c), you have to show that these IQ scores

    are, first of all, valid, second of all, persistent

    prior to the age of 18, in which case, you need school

2

records.

Tr. 27-28.  Counsel for the plaintiff stated in his opening statement that the claim was that the plaintiff "meets or equals the listings at either 12.05(c) or 12.05(d)."

Vincent L. Wise, the plaintiff, stated in his testimony that he had received social security disability benefits from 1991 to either 1999 or 2000.  He then returned to work activity.  He lost jobs due to low blood sugars that necessitated his absences.  He last worked as a WalMart deli clerk.  He had that job for about a year.  He was able to work, on a weekly basis, only about 10 to 20 hours.  On one occasion he was picked up at work by an ambulance because he had a very high blood sugar and was sick.  When he has a high blood sugar he feels disoriented.  This disorientation last from one half hour to 45 minutes.  When he "eats something" at the onset of such a feeling, the spell of disorientation can be avoided.

His blood sugar is not under control, and he has had a dozen low blood sugar reactions in the last year.  He

3

administers insulin injections to himself, four times a day.
His other medications are Lithium, 450 milligrams three times a
day, Risperdal, two milligrams once a day, Reglan, 10
milligrams four times a day, Aciphex, 20 milligrams twice a
day, and the insulin.

He gets mental health treatment at the Stevens Center,
Dr. Vicki Ackert, and the Lithium and Risperdal were prescribed
there.

He stated that he has problems dealing with people.  He
was not willing on an occasion to fill a customer's order for
deli meats.

He stated that he gets up some morning at 4:00 a.m. and
routinely at 6:30 a.m. and checks his blood sugar.  He checks
it four or five times a day.  The first morning reading is
usually high.  The others vary between 40 and 500, and
sometimes they are higher.

He stated that he does not "baby sit" his several
children, and that "friends...come over and take care of that."
Tr. 37.  He is not able to drive himself.  He does not have a
driver's license.  He is "paranoid of having low blood sugar
behind the wheel" that might lead to bodily harm to someone.
Tr. 38.  He does some housework.  He occasionally goes out of
the house with his wife.  He takes only one shower a week,
sometimes two, due to a lack of energy.  Asked about leaving
home to visit other persons, he said, "[t]he furthest I go is
maybe outside just to see what the weather is like and back in.
That's it."  Tr. 39.  He has visits at his house from
relatives.

He stated that he can be on his feet for three hours.
As an example of the sort of thing that limits his ability to
be on his feet for longer, he told of a visit that he had made
to a friend's house and of a conversation in a standing
position (presumably, in context, for more than three hours)
with the friend on the friend's front porch.

He stated that he has stomach problems with "pretty much everything" he eats.

He stated that he can read if the print is slightly larger than newspaper print.  He stated that his stomach medications, Aciphex and Reglan, helped his acid reflux stomach problems at first, but not at all after that.

He stated that he had one hospitalization in the last two years for a high blood sugar.  He has not had hospitalizations related to his psychological problems.  He has not used any controlled substances, or alcohol or cigaretts, for about two years.  His weight has ranged from 120 to 130 pounds.  He thinks that he could not return to work because he gets sick when standing too long.  He does not get sick when he is sitting.  Tr. 46.

He stated that he can not identify any behavior on his part, or any food or drink, that may cause him to have "out of range" blood sugar readings.  Tr. 48.

The vocational witness, Mitchell Schmidt, stated that Vincent Wise worked in light and medium unskilled work positions in the past.  He stated that a person with Wise's work experiences, of Wise's age and Wise's education, who "suffers from insulin dependent diabetes, bipolar disorder with depression, gastrointestinal reflux disease, hepatitis C and borderline intelligence," if the person were limited to lifting and carrying no more than 10 pounds frequently, 20 pounds occasionally, pushing and pulling 20 pounds with force, performing simple, repetitive one or two step tasks, and if the person were limited to jobs involving no more than a low level of stress, not involving public contact or direct interaction with co-workers and not involving more than a moderate level of attention and concentration, could perform the work performed by Vincent Wise in the past such as deli clerk if public interaction were not involved.  Tr. 50-52.  The hypothetical person also could perform other jobs in the economy identified by the vocational witness.  The vocational witness stated that more than one absence a month on a recurring basis would probably cause a person not to be able to sustain employment. A person who could work only 10 to 20 hours a week in a 40 hour

per week job could not sustain employment, the vocational witness stated.

The plaintiff's attorney summarized the plaintiff's position before the ALJ, stating that due to the insulin dependency and bipolar disorder, the poorly controlled diabetes of Mr. Wise, and the effects of workplace physical and mental stressors, Wise meets the criteria of listings 12.05(c) and 12.05(d).

On October 19, 2005, the ALJ issued his Decision, denying the application of the plaintiff for benefits.  (Tr. 17-24).  The Appeals Council denied the plaintiff's request for review (Tr. 8-11), making the ALJ's decision the final decision of the Commissioner.

The plaintiff filed his complaint with this court on May 9, 2006.  The defendant filed an answer to the complaint on June 28, 2006 (doc. 6) and a copy of the administrative record on August 9, 2006 (doc. 9).  Pursuant to Local Rules 83.40.4 and 83.40.5, the plaintiff filed his brief on October 11, 2006

8

(doc. 12) and the defendant filed her brief on November 13,
2006 (doc. 13).  No reply brief has been filed.  A substitute
transcript was filed with leave of court on January 17, 2007
(docs. 15, 16, 17).

If the Commissioner's decision is supported by
substantial evidence it must be affirmed. 42 U.S.C. § 405(g).
Substantial evidence means "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.
1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.
1995).  Substantial evidence is more than a mere scintilla of
evidence but less than a preponderance. *Brown v. Bowen*, 845
F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence
if the Commissioner ignores countervailing evidence or fails to
resolve a conflict created by the evidence.  *Mason v. Shalala*,
994 F.2d 1058, 1064 (3d Cir. 1993).  However, in an adequately
developed factual record, substantial evidence may be
"something less than the weight of the evidence, and the

possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2)

10

whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §404.1520 and 20 C.F.R. §416.920.

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he is unable to engage in his past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

In this case the ALJ determined that the plaintiff has not engaged in substantial gainful activity since the alleged onset date, that he has an impairment that is severe, that his impairments do not meet or equal any listed impairments, and that he is not able to perform his past relevant work.  The ALJ

11

further determined that the plaintiff has the residual

functional capacity[1] to perform a range of unskilled light work

and to perform jobs that had been identified by the vocational

expert (router, switch clerk, garment sorter).

On the basis of these findings, the ALJ found the

plaintiff not to be disabled.

The plaintiff's first argument is that the ALJ erred in

not finding that he suffers from acidosis and retinitis.  The

ALJ stated at Tr. 18 that there is no evidence of acidosis and

at Tr. 21 that there was a hospitalization for ketoacidosis.

Apart from noting one hospital admission for ketoacidosis in

2004, the plaintiff points to no evidence that undermines or

contradicts the findings of the ALJ on these symptoms.  Given

that the listing 9.08 Diabetes mellitus criterion as to

acidosis is "[a]cidosis occurring at least on the average of

once every 2 months documented by appropriate blood chemical

---

1.   "Residual Functional Capacity" is "that which an individual is still able
to do despite the limitations caused by his or her impairment(s)."  *Burnett v.
Commissioner of Social Security Adm.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting
*Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).

tests 1 pH or PCO² or bicarbonate levels," the apparent

inconsistency noted by the plaintiff is immaterial.


The plaintiff's second argument is that the ALJ erred

in accepting a 70 or lower IQ score.


The ALJ's stated rationale was:

I have evaluated the claimant's borderline intellectual
functioning under listing 12.05C.  The claimant's
representative argued at the hearing that the claimant
meets listing 12.05.  However, I find that the claimant
does not meet the threshold diagnostic requirement of
the listing.  There is no evidence of significantly
subaverage intellectual functioning with deficits in
adaptive functioning manifested during the
developmental period.  None of the claimant's treating
sources indicated that the claimant is retarded.  There
was never a reference to his intellectual capacity as
an abnormal condition as his diabetes condition was
documented since age 9.  The consultative psychological
examiner, Dr. Nutter, reported WIAS-III scores of 81
verbal, 70 performance, and 74 full scale (Exhibit 3F).
Dr. Nutter reported a diagnoses of borderline
intellectual functioning and not mental retardation.
There was no suggestion by Dr. Nutter that the
claimant's mental functioning was at the retarded level
and there was no suggestion that his borderline
intellectual functioning related back to prior to age
22.  Dr. Nutter did not state that the scores were
valid and that they are a true reflection of the
claimant's intellectual ability currently or before age
22. The claimant has a long history of abusing multiple
chemicals and there is no medical evidence of record to
suggest that the claimant's borderline intellectual

      functioning is not due to drug abuse.  The claimant was
      heavily abusing alcohol at the time of the consultative
      examination.  Dr. Nutter did not address the validity
      of the IQ scores and did not address the effect of
      substance abuse on the scores.  Substance use would
      slow his ability on the performance subtests and lower
      his scores as these are timed tests.  The claimant's
      treating psychiatrist diagnosed the claimant with
      bipolar disorder and never indicated or suggested that
      the claimant was also retarded.  The treating mental
      health providers never suggested problems due to
      intellectual functioning.  Based on all of the above
      and the record as a whole, I find that the borderline
      intellectual functioning does not meet listing level
      severity.

Tr. 18-19.  We can not reasonably conclude that the finding

that there is not in the plaintiff a significantly subaverage

intellectual functioning with deficits in adaptive functioning

manifested during the developmental period is not supported by

substantial evidence or by an adequate explanation.


      The plaintiff argues that his borderline intellectual

functioning is sufficient to meet the first requirement of

12.05.  This is presented as his third argument.  The court is

required under 42 U.S.C. § 405(g) to determine whether the

Commissioner's decision is supported by substantial evidence.

The court has no mandate to find the facts.  The ALJ, contrary

to the plaintiff's argument, did address the question whether

14

the plaintiff has symptoms that meet or equal the listing 12.05
criteria and determined that he does not.  Although the ALJ
also used the terminology that the plaintiff is not retarded,
he did not demonstrate in his articulation of his rationale
that he was deciding whether the plaintiff is retarded rather
than whether he meets the 12.05 criteria.

     The plaintiff also argues, in his fourth argument, that
the ALJ erred in placing weight upon the fact that Dr. Nutter
had not stated that the scores were valid in deciding that a
12.05 listed impairment was not made out.  In stating that Dr.
Nutter had not stated that the scores were valid and that they
are a true reflection of the claimant's intellectual ability
currently or before age 22, the ALJ was correctly noting and
applying the specific listings requirement of a **valid** IQ score
and was performing a reasonable critique and analysis of the
validity of this particular IQ score.  We do not believe that
it is correctly asserted that the ALJ substituted or inserted
his own medical opinion in place of Dr. Nutter's.

The plaintiff's fifth argument is that the ALJ erred in rejecting evidence of the plaintiff's moderate deficiencies of concentration, persistence or pace and moderate difficulties in maintaining social functioning.  The ALJ found that the plaintiff has average ability to maintain attention or concentration.

This argument of the plaintiff has some weight.  The ALJ accepted doctors' reports of moderate restrictions in ability to understand, to remember and to carry out detailed instructions, and to respond appropriately to work pressures. Tr. 21.  The ALJ, however, then found the plaintiff to have average ability to maintain attention or concentration.  We do not necessarily see the basis for equating "moderate restrictions" and average ability.  However, the plaintiff has not shown the arguable difference to give rise to a difference in outcome under the statute, regulations or case law.

The plaintiff's sixth argument is that the ALJ erroneously failed to find functional limitations on the part of the plaintiff.  The plaintiff argues that the ALJ failed to

draw reasonable inferences from the report of Dr. Klieman about
the limitation caused by the plaintiff's diabetes.  The ALJ
found that the plaintiff's diabetes precludes him from
performing heavy or medium work, but to be able to perform a
range of unskilled light work.  The ALJ here considered and
discussed all of the evidence, explaining his findings.  The
arguments of the plaintiff are arguments that other inferences
should have been drawn.  Under the substantial evidence
standard to review, the presentation of other reasonable
inferences does not warrant a reversal where the inferences
drawn are supported by evidence and an explanation of the
findings is provided.

     The plaintiff argues that the ALJ erred in rejecting
treating physicians' opinions that the plaintiff is disabled.
These opinions were considered by the ALJ, but he gave little
weight to them because the ALJ found that accompanying
treatment notes reflected that the plaintiff was functioning
generally well and because he found that the plaintiff's
diabetic condition is well controlled when he is compliant with
treatment and abstains from drugs and alcohol.  The plaintiff

throughout his arguments does not either demonstrate or assert that there is a basis to question the ALJ's finding that the plaintiff's diabetic condition is well controlled when he is compliant with treatment and abstains from alcohol and drugs.

The plaintiff argues that the ALJ erroneously found him not to be credible.  However, the ALJ did explain his credibility finding, generally, by referring to "inconsistent statements" and demeanor, and did point to medical evidence that supports a finding of limitations from the disease that are less than disabling.  The ALJ did find and cite medical opinions support for his findings; most particularly, Dr. Smith's and Dr. Klieman's reports cited and discussed at Tr. 21.  Tr. 460-507.

It is recommended that the appeal of the plaintiff be denied.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  February 1, 2007.